GUÉDON CORNING ET AL. v. THE TOWNSHIP OF MASONVILLE.

74 177
117 214

*Taxes—Assessment—Logs in transit.*

1. Upon the facts as stated in the opinion, it is held that the intended place of destination of plaintiffs' logs on the second Monday of April was within defendant township, where they were properly assessable, under subd. 4, § 11, Act No. 153, Laws of 1885.

2. Logs banked into the stream, and only waiting the time of high water to be floated to their place of destination or assorting ground, and which are treated by the owners as *in transit*, do not fall within the last proviso of subd. 4, § 11, Act No. 153, Laws of 1885, providing for the assessment of lumber and logs piled or left in any yard, railroad reserve, or in any shed, or any *other place*, in the township where the same *may be* at the time provided for by law for making the assessment.

Error to Delta. (Grant, J.) Argued February 5, 1889. Decided February 15, 1889.

*Assumpsit.* Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*F. O. Clark*, for appellants.

*E. P. Royce* (*F. D. Mead*, of counsel), for defendant.

74 MICH—12.

[The points of counsel are stated in the opinion.—
REPORTER.]

LONG, J. This action is brought to recover a tax paid
to the treasurer of defendant township under protest.
On the trial in the court below defendant had a verdict
by direction of the court, and, judgment being entered
thereon, plaintiffs bring error.

Plaintiffs are copartners, doing business under the firm
name of Corning Lumber Company, and all reside in the
city of East Saginaw, and their business office is located
there, and was so located on the second Monday of April,
1887.

Plaintiffs, during the winter of 1886 and 1887, were
getting out logs in Alger county, this State, in township
44 N., range 22 W., on the waters of the west branch of
the Whitefish river, which empties into Little Bay de
Noquette, in the township of Masonville, Delta county.
During the winter the plaintiffs cut and banked into the
Whitefish river some 4,100,000 feet of pine saw-logs in
said township No. 44 N., range 22 W., and the logs
were so banked into said river in said township, and
remained there until after the second Monday in April,
1887.

The supervisor of the town of Masonville, Delta county,
on the second Monday of April, 1887, placed an assess-
ment of valuation, for the purposes of taxation, upon the
assessment roll of his township, against the plaintiffs,
upon personal property valued at $12,600, and which
assessment was made upon these logs then so lying in
Alger county, and banked into the Whitefish river. Upon
this assessment the supervisor extended a tax upon his
roll against the plaintiffs, for State, county, and township
purposes, of $402.58, and placed the roll, with his proper

warrant indorsed thereon, in the hands of the township treasurer of Masonville for collection of such taxes. The treasurer was about to levy and sell these logs to satisfy the tax, when the plaintiffs paid the tax under protest; alleging, in substance, in said protest, that they were not liable to taxation upon said personal property for the following reasons:

" 1. That the logs were not in the said township of Masonville on the second Monday of April, 1887, the time when the assessment roll, under the provisions of the statute, must be made out.

" 2. That the logs were either in rollways in the township and range above mentioned, or were in transit, with their destination at Saginaw, Mich., and not at Masonville, and that the supervisor could not legally assess the property in transit, coming to and moving towards another county or locality in the State.

" 3. Because the property or logs were to be sawed into lumber in Saginaw county, and were subject to assessment there, as the said county of Saginaw is the residence of the plaintiffs, and the place where their only business office, mill, piling-ground, or storage-ground is located, and is the only place where the plaintiffs control any office, mill, dock-yard, piling-ground, or warehouse in connection with the said business of the manufacturing for sale of logs or lumber, and was the destination of said property."

Plaintiffs claim in their declaration, in which they set out the above protest, that the taxes were illegally and fraudulently assessed. in the town of Masonville, and were assessed in violation of the provisions of sections 10 and 11 of Act 153, Laws of 1885. We do not agree with counsel for plaintiffs in this contention. The property was properly assessed, under the circumstances shown in this case, in defendant township. The fourth subdivision of section 11 of the above act provides:

" Personal property of non-residents of the State, and all forest products owned by residents or non-residents, shall be assessed to the owner, or to the person having

control thereof, in the township or ward where the same may be, except that, where such property is in transit to some place within the State, it shall be assessed in such place:  *Provided,* all forest products in transit on the second Monday of April and thereafter found in the waters or streams of this State, shall be held to have a place of destination at the sorting-grounds of the rafting and driving agents or booming company nearest the mouth of such stream, unless the contrary shall be made to appear by the owner or party having the same in charge: *Provided, further,* that all lumber, logs,    *    *    *    that may be piled or left in any yard, railroad reserve, or in any shed, or any other place, shall not be deemed in transit, but shall be assessed to the owner thereof in the township or ward where the same may be situate at the time provided for by law for taking any assessment."

It appears that on February 18, 1887, a contract in writing was entered into between plaintiffs and Barber, Scully & Co., who reside out of the State, by which plaintiffs agreed to sell all said logs, so assessed, to Barber, Scully & Co.  This contract provides :

"The said party of the first part hereby agrees to deliver the said logs as early as possible in the spring of 1887 to said party of the second part, on said second party's order to so deliver; the delivery is to be made from the Peacock boom, when Moiles Bros. or A. E. Wilson & Co. call for the same, free of any charge to second party, in accordance with terms of delivery named between Moiles Bros., of Detour, and Barber, Scully & Co., Peacock boom, at mouth of Whitefish river."

The contract referred to above, between Moiles Bros. and Barber, Scully & Co., provides:

"Said second parties will have between four and five million feet of pine saw-logs in Peacock's store-boom, in Little Bay de Noquette, at the opening of navigation the present season, purchased by P. M. Barber, of the Corning Lumber Company, which logs said second parties agree to deliver to first parties as called for, already sorted and in bulk, by themselves, in said store-boom, for the purpose of being towed to and manufactured at

the mill of said Moiles Brothers, at Detour, the present season."

Prior to making these contracts, and on February 4, 1887, the Corning Lumber Company wrote Mr. Peacock as follows:

"EAST SAGINAW, Mich., Feb. 4, 1887.

"ROBERT PEACOCK: You are requested to receive all our floating property from Whitefish river into your booms, take charge of the same," etc.   " We want logs put in your store-boom.   We have not determined yet what we will do with them.

"CORNING LUMBER CO."

It appears that Robert Peacock had before that time advertised his booming grounds at the mouth of the Whitefish river, and the terms and conditions upon which he would receive the logs put into his booms.   These booming grounds were within the limits of the defendant township.   On May 7, 1887, the plaintiffs again wrote Mr. Peacock, stating that they had made the contract with Barber, Scully & Co., and asking him, as a special favor, that he would work all the men he possibly could, so that he would be sure and get the first raft out by the time mentioned in the contract.   Under these circumstances there can be no doubt that on the second Monday of April, 1887, the intended place of the destination of these logs was not East Saginaw, but Peacock's boom, at the mouth of the Whitefish river.

Mr. Robert Peacock was the supervisor of defendant township at that time, and presumably familiar with the provisions of the statute above quoted.   He knew that these logs were banked in the Whitefish river; that they were owned by the Corning Lumber Company, residents of East Saginaw; of the contract to sell and deliver the same to Barber, Scully & Co. as soon as they could be got down; and that the place of assorting them and delivery was to be at the mouth of the Whitefish river.

These logs were then banked in the river, and were, within the meaning of subdivision 4, above quoted, held to have a place of destination at the booming company's grounds. This place of destination was also fixed by these two contracts. Mr. Peacock very properly, with these facts before him, assessed the property in his township. It does not appear to have ever been assessed at any other place. We do not see upon this record how counsel could contend that its destination was East Saginaw, though it is the ground taken by plaintiffs when they paid the tax, as appears by the protest above set forth. On the argument here, however, counsel takes the position that the property was assessable in Alger county, and calls attention to the last proviso in subdivision 4 of section 11, above quoted:.

"Provided, further, that all lumber, logs, &ast; &ast; &ast; that may be piled or left in any yard, railroad reserve, or in any shed, or any other place, shall not be deemed in transit, but shall be assessed to the owner thereof in the township or ward where the same may be situate at the time provided for by law for taking any assessment."

Some stress is laid by counsel upon the term used, "or any other place." We do not think, from the circumstances shown in this case, that these logs can be said to have been piled or left in such a way in Alger county as to come within the terms of this proviso. They were banked into the stream, and only waited the time of high water to float them to their place of destination or assorting ground. They were treated as in transit by the plaintiffs in the payment of the tax, and in making the protest, and the case was tried in the court below by the plaintiffs upon the theory that they were in transit, and that their place of destination was either at Saginaw or Detour. The plaintiffs were the owners of these logs at the time the tax was assessed, though they had made

their contract with Barber, Scully & Co. before that time. Even before this contract was made, they were to go down to the mouth of the river, and there remain until the plaintiffs had determined what to do with them. After the contract was made, the place of destination was not changed.

We think the court below very properly directed a verdict for the defendant township. The judgment must be affirmed, with costs.

The other Justices concurred.